**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Terry Jean BIAYS, Defendant and Appellant.**

**No. 15331.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1987.

Decided March 18, 1987.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Robert A. Haivala of Molstad & Molstad, Sturgis, for defendant and appellant.

HENDERSON, Justice.

## CRIMINAL APPEAL/PROCEDURAL BACKGROUND

For purposes of convenience and clarity, we shall refer to defendant-appellant Terry Biays as Biays. Biays was charged by Information with (1) Count I—Aggravated Assault; and (2) Count II—Abuse, Expose, Torture, Torment or Cruelly Punish a Minor. A Meade County jury found her not guilty of Aggravated Assault (skull fracture) but guilty of the above-described Count II (abrasion, bruises, and contusions on face and body). Biays seeks reversal contending she was denied a fair trial. Appellate counsel for Biays was not trial counsel. Three issues are raised on appeal:

(1) Both counts in the Information arose from one event;

(2) Biays' constitutional rights were violated in that she was twice put in jeopardy for the same offense; and

(3) State's misconduct during closing argument denied her due process of law.

Combining the first and second issues for decision below and then treating the third issue separately, we affirm.

## FACTS

Biays and her husband Henry, who serves in the Air Force, reside at Ellsworth Air Force Base near Rapid City. Shortly after their arrival in South Dakota in 1984, Biays and her husband decided to become foster parents. In April 1985, they received their first foster children, a boy named Douglas (born January 19, 1982) and a girl named Edith (born September 19, 1984). Events leading to placement of Douglas and Edith are set forth below.

These two children were found in a motel room with intoxicated adults; these adults were not their parents. Temporary custody was assumed by the Department of Social Services (DSS). Children had been living with their mother, Ramona, and her boyfriend, Gerald, at a campground near Rapid City. Past DSS reports included references to Gerald's abuse of Ramona and Ramona's slapping of the infant child. Both children were returned to Ramona after staying approximately one week with the Biayses.

In late August 1985, the boy suffered a broken leg, reportedly incurred during a fall from a table at his home. Examining physician Wong recorded his suspicions that such a break "seemed unlikely" to have occurred under the circumstances described. His condition necessitated recuperation in a partial body cast, extending from his waist to his foot. DSS requested and was granted temporary custody of both children on grounds that (1) the boy would not receive proper care at home; and (2) Ramona and Gerald could undergo treatment for alcohol problems while the children were away.

On August 30, 1985, the boy (now approximately two and one-half years old) and the girl (now approximately one year old) were again placed with the Biayses. However, Biays and her husband had recently decided to adopt a child. On September 2, 1985, husband flew to the Philippines to complete paperwork which could culminate in adoption. He did not return until early October 1985. Biays had almost exclusive custody and control of the two children named in the Information.[1]

Biays testified that the girl was moody and much less playful than she was in April. According to Biays, on September 2 or 3, 1985, the girl slipped in the bathtub and bruised her forehead. Biays claims she reported this incident to DSS; however, DSS employees claimed no knowledge of any report. Biays also testified (as did other witnesses) that the girl would occa-

1. Biays relinquished custody on two occasions: (1) A next-door neighbor babysat for approximately five hours on September 16, 1985.

(2) The next-door neighbor's fourteen-year-old daughter babysat for approximately one hour on September 14, 1985.

sionally bang the back of her head against hard objects.

Biays noted that on September 16, 1985, the girl's face was puffy and her nose was runny. Biays believed the girl was getting a cold. She said she became more concerned the next day as her face was more swollen.

On September 18, 1985, Biays took the girl to Rapid City Regional Hospital. Examinations revealed that she had an occipital-area skull fracture accompanied by bleeding into the brain. Various other injuries (bruises and discolorations) were also discovered on other parts of her body. Examining physician Sutliff testified that the injuries appeared non-accidental. He further stated that these injuries could have occurred from one to seven days prior to September 18, 1985, however, his best estimation was one to two days before examination.

Biays was arrested on September 18, 1985. She was charged by Information with (1) Aggravated Assault in violation of SDCL 22–18–1.1(1)[2]; and (2) Abuse, Expose, Torture, Torment or Cruelly Punish a Minor, *in a manner which does not constitute aggravated assault,* in violation of SDCL 26–10–1.[3]

## DECISION

## I. AND II.

### DOUBLE JEOPARDY CLAIM NOT SUSTAINABLE.

Biays was conjunctively charged with two crimes (1) Aggravated Assault; *and* (2) Abuse, Expose, Torture, Torment or Cruelly Punish a Minor. She advocates that the charging of both crimes against her is improper as both crimes flow from identical facts or circumstances. Moreover, Biays contends that State should have been compelled to drop one of the two charges or charge her in an alternative fashion. She concludes that her constitutional rights were violated in that she was twice subjected to punishment for the same offense.

Both our state and federal constitutions contain prohibitions against double jeopardy. U.S. Const. amend. V; S.D. Const. art. VI, § 9. Included within double jeopardy coverage is the protection "against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969) (quoted in *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977)). *See State v. Feiok,* 364 N.W.2d 536, 542 (S.D.1985) (Henderson, J., dissenting); *State v. Grey Owl,* 316 N.W.2d 801, 803 (S.D.1982). As the United States Supreme Court has stated: "The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." *United States v. Benz,* 282 U.S. 304, 308, 51 S.Ct. 113, 114, 75 L.Ed. 354, 357 (1931) (quoting *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872, 878 (1874)). With these authorities in mind, we now inquire: Were the charges (Count I—Aggravated Assault, Count II—Abuse, Expose, Torture, Torment or Cruelly Punish a Minor) brought against Biays tantamount to violation of state and federal prohibitions against double jeopardy?

Initially, we note that aggravated assault is a distinctly different offense than abuse of a minor.[4] The aggravated assault stat-

---

**2.** SDCL 22–18–1.1(1) provides:

Any person who:

(1) Attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life;

* * * * is guilty of aggravated assault. Aggravated assault is a Class 4 felony.

**3.** SDCL 26–10–1 provides:

Any person who abuses, exposes, tortures, torments or cruelly punishes a minor *in a manner which does not constitute aggravated assault,* is guilty of a Class 4 felony. (Emphasis supplied.)

**4.** This Court has adopted the "same evidence" test in double jeopardy cases. *See State v. Pickering,* 88 S.D. 548, 553, 225 N.W.2d 98, 100–01 (1975). "[T]he plea of double jeopardy is avail-

ute acts upon any person who "attempts to cause *serious bodily injury* ... or causes such injury, under circumstances manifesting *extreme indifference to the value of human life* [.]" It is designated as a Class 4 felony, whereas the abuse of a minor section seeks to deal with any person "who abuses ... *a minor in a manner which does not constitute aggravated assault* ...." It is classified as a Class 4 felony. *See* SDCL §§ 22–18–1.1(1) (emphasis added) and 26–10–1 (emphasis added). It is therefore possible that a person may be found guilty of both aggravated assault of a minor (in violation of SDCL 22–18–1.1) and abuse of that same minor (in violation of SDCL 26–10–1). *Cf. State v. Brammer*, 304 N.W.2d 111 (S.D.1981) (where this Court held that a defendant was improperly charged with both rape and sexual contact where both charges stemmed from the same event).

At the onset of criminal proceedings against Biays, State sought to distinguish Count I from Count II. Count I, Aggravated Assault, applied to the skull fracture and concomitant injuries. Count II, Abuse, Expose, Torture, Torment or Cruelly Punish a Minor, related to other less severe injuries (bruises and discolorations) which were unrelated to the fracture. Additionally, State contended that the skull fracture (aggravated assault) occurred at a different time than those injuries constituting the abuse of a minor charge. Essentially, State alleges that Count I and Count II reflect two separate instances of injury, i.e., in one instance, Aggravated Assault (skull fracture), and the other instance, Abuse, Expose, Torture, Torment or Cruelly Punish a Minor. State asserts that it is the jury's function to determine if sufficient evidence existed to support each allegation.

At trial, State attempted to prove that Biays had at least twice abused the infant girl. The jury returned a verdict of not guilty as to Count I—Aggravated Assault, and guilty as to Count II—Abuse, Expose,

Torture, Torment or Cruelly Punish a Minor. By returning only one guilty verdict, the jury was fulfilling its function of "decid[ing] all questions of fact" including "credibility of the witnesses and ... weight of the evidence." *State v. Painter*, 70 S.D. 277, 281, 17 N.W.2d 12, 14 (1944). *See State v. Jenkins*, 260 N.W.2d 509, 513 (S.D. 1977); *State v. Brewer*, 86 S.D. 434, 197 N.W.2d 409 (1972). It is the jury (and not the judge) who should determine if State has carried its burden of proving a defendant guilty of the offenses charged. *State v. Bean*, 265 N.W.2d 886, 891 (S.D.1978); *State v. Nelson*, 80 S.D. 574, 129 N.W.2d 54 (1964). There was expert testimony, in the form of opinions, adduced at trial. These opinions established various time frames within which the several injuries to the infant girl may have occurred. Certainly, there was a time frame established for the several injuries between September 16 and 18, 1985. It was within the province of the jury to reject any testimony suggestive that the skull fracture did not occur as part of the same incident that the other injuries occurred. The jury found, under the testimony, as the trier of the fact, that no incident had taken place wherein Biays had fractured the skull of the infant child. However, the jury did find, as the trier of the fact, that there was an incident or incidents wherein Biays did either abuse, expose, torture, torment, or cruelly punish this infant child in a manner which did not constitute aggravated assault.

In *State v. Grey Owl*, 316 N.W.2d at 803, we expressed that the double jeopardy clause of the Fifth Amendment of the United States Constitution afforded the accused three protections. Those three protections were quoted in *State v. Feiok*, 364 N.W.2d at 542 (Henderson, J., dissenting). We are concerned here with the third protection where "it protects against multiple punishments for the same offense...." *Grey Owl*, 316 N.W.2d at 803 (citing *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113,

---

able only when the separate offenses are in substance the same, so that the evidence which proves the one would prove the other and if an

essential element of one is not necessarily present in the other there is no former jeopardy." *Id.*, 88 S.D. at 553, 225 N.W.2d at 101.

75 L.Ed. 354 (1931)). The "same offense" is not in this case. As we have explained above, each crime contained different elements. Simply because there is an overlap in the proof, a second prosecution is not prohibited once it is established that there are different elements for different crimes. Biays was convicted of only one felony and the possibility existed, until such time as the jury came in with its verdict, that she could have been convicted of two offenses. Therefore, we disagree and reject Biays' "double jeopardy" arguments.

### III.

### PROSECUTORIAL MISCONDUCT ARGUMENT NOT PRESERVED FOR APPEAL.

■ Biays devotes a great deal of her opening brief and her entire reply brief to a due process of law argument, asserting that appellant was denied a fair trial because of improper argument by the prosecutor before the jury. Essentially, Biays is claiming that the State "switched horses" in its closing argument. It appears, at the trial, that the State argued that Counts I and II arose from separate incidents. During the second half of its closing argument, State requested the jury to "return a guilty verdict on one or the other counts" and "to determine which of those counts fits the crime...." Biays vigorously objects to this "switching horses" during closing arguments. We note, however, that not once did counsel make a record during these closing arguments. We also note that Instruction 30 notified the jury that "the final argument of counsel is intended to help you in understanding the evidence and applying the law as set forth in these instructions, *their remarks are not evidence.*" (Emphasis added.) We question highly that under the evidence, State was guilty of any prosecutorial impropriety and/or that it affected the ultimate results of this trial. This Court has repeatedly held that a record must be made to preserve any error on prejudicial, prosecutorial misconduct. Counsel cannot sandbag by remaining silent and then come before the Supreme Court contending error for alleged prosecutorial misconduct during closing argument. If appellant fails to object to any of the prosecutor's remarks, he is precluded from asserting error on appeal. *State v. Padgett,* 291 N.W.2d 796 (S.D.1980).

Affirmed.

MORGAN, SABERS, and MILLER, JJ., concur.

WUEST, C.J., concurs specially.

WUEST, Chief Justice (concurring specially).

I concur, but I would point out that SDCL 23A–6–23 permits two or more offenses to be charged in the same indictment in separate counts for each offense, if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together. However, a defendant convicted on two counts, relating to a single offense, may only be sentenced on one count. As a matter of practice, the jury should be instructed the defendant can be found guilty of only one count if the counts are different statements of the same offense. *See State v. Teutsch,* 80 S.D. 462, 126 N.W.2d 112 (1964). *See also, State v. Myott,* 246 N.W.2d 786 (S.D. 1976).