2000 SD 156

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Gatluak Puot WELL, Defendant and Appellant.**

No. 21188.

Supreme Court of South Dakota.

Argued Oct. 23, 2000.

Decided Dec. 20, 2000.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Scott Carlson, Julie Hofer, Minnehaha County Public Defender's Office, Sioux Falls, SD, Attorneys for defendant and appellant.

SABERS, Justice

[¶ 1.] A jury found Gatluak Puot Well guilty of aggravated assault with a dangerous weapon (aggravated assault) and abuse or cruelty to a minor (abuse). Well was sentenced by the court on the conviction for abuse and no sentence was entered on the conviction for aggravated assault. We affirm the conviction for abuse but remand for reconsideration of the sentence and reverse the conviction for aggravated assault as mutually exclusive.

**FACTS**

[¶ 2.] On March 20, 1999, Well was informed by a neighbor, Kristen Woodward, that she suspected his son, B.G., had taken video game equipment from her home. Well searched his son's room and discovered part of the video game equipment in B.G.'s backpack. Well then called B.G. into the room to confront him about the discovery. B.G. admitted being in Woodward's apartment with some other kids and taking the item.

[¶ 3.] Woodward left Well's apartment and went to the apartment of Linda Gilley located next door. While standing in the hallway talking to Gilley they heard very loud noises and screams for help coming from Well's apartment. Woodward "likened it to the sound [ ] a baseball bat might [make] when hitting a wall, loud and sharp." Woodward pounded on Well's door with no immediate answer.

[¶ 4.] B.G. eventually answered the door and Woodward noticed he was "crying and trying to catch his breath." Well then grabbed B.G. by the arm and began dragging him down the hallway to talk to the parents of the other boys involved. Woodward noticed that Well "had a belt in his hand, it was a braided dark leather belt with a silver buckle." Woodward also noticed a gash across the back of B.G.'s skull. Woodward testified that blood was "visibly dripping" from the wound and that "the patch of blood was dripping onto his left shoulder, and [Woodward] estimated it to be the size of [her] spread palm."

[¶ 5.] Meanwhile, Gilley was on the phone to 911. Woodward grabbed the phone from her and told the operator "they had to hurry ... the man has split the kid's head open and it was bleeding." Gilley testified she watched as Well drug the screaming child down the hall. She also observed B.G. "on the floor on his knees and his father [Well] struck him twice with a leather belt across the back of the head."

[¶ 6.] As Well approached his own apartment, B.G. grabbed Woodward's arm and begged her not to let him go. Well told Woodward "why do you do this to me? You bring this into my home. [Y]ou are going to kill him." Woodward testified that she thought the best thing to do was to let B.G. go and wait for the police to arrive because she believed she was making Well more angry.

[¶ 7.] Officers from the Sioux Falls Police Department arrived and found Well stringing his belt back in the loops of his pants and B.G. in the bedroom crying. An officer seized the belt and "immediately noticed that there was blood on the woven portion of the belt," and "on the belt buckle also." After being advised of his rights, Well stated that he "disciplined him with the belt." When asked if he hit B.G. in the head with the belt he "stated he did."[1]

[¶ 8.] B.G. was brought to the emergency room of Sioux Valley Hospital for treatment. According to Dr. Richard Kaplan, B.G. had "large cuts on the back of his head that were bleeding quite profusely. In front of his left ear there were areas of bumps and swelling." His neck was tender, there was bruising on the left tricep and his right arm was tender and had scrape marks. On his back "there were two areas where his skin had somewhat disrupted by very big areas, looked like they had been scraped or scratched or something." He also had an area that was sore below his knee "where there was a slight mark." Dr. Kaplan treated and photographed these injuries.

[¶ 9.] Well was indicted for aggravated assault, aggravated assault-extreme indifference to the value of human life, and abuse. A jury trial was held and Well was found guilty of aggravated assault and abuse. Well was found not guilty of aggravated assault-extreme indifference to the value of human life. Well was sentenced on the conviction for abuse to a term of four years in the South Dakota State Penitentiary, with all four years of that sentence suspended if Well complies with various conditions, including six months in the Minnehaha County Jail. The trial judge specifically sentenced Well solely on the conviction for abuse.

[¶ 10.] Well appeals the convictions and the sentence imposed contending it was error for the trial court:

1.) to allow Dr. Kaplan to testify that he took pictures of B.G. to use in teaching medical students about child abuse in that it called for a legal conclusion;

2.) to refuse Well's jury instruction on alternative counts;

3.) to deny Well's motion for Judgment of Acquittal on the conviction for aggravated assault; and that

4.) the evidence was insufficient to support the convictions.

### STANDARD OF REVIEW

[¶ 11.] "A trial court's decision regarding the qualification of experts and the admission of their testimony will only be reversed upon a showing of an abuse of discretion." *State v. Spaans*, 455 N.W.2d 596, 599 (S.D.1990). Additionally, "our standard of review of a denial of a motion for judgment of acquittal is whether the State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged." *State v. Larson*, 1998 SD 80, ¶ 19, 582 N.W.2d 15, 17. "In determining the sufficiency of the evidence to constitute the crime, the question is 'whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a. finding of guilt beyond a reasonable doubt.'" *Id.*

[¶ 12.] We review a trial court's failure to give a requested instruction as follows:

On issues supported by competent evidence in the record, the trial court should instruct the jury. The trial court is not required to instruct the jury on issues lacking support in the record. Failure to give a requested instruction

---

1. During the questioning, Well maintained that "in his country of Sudan, that discipline is harsher than it is here." The record reflects that Well had lived in the United States for nine years at the time of this incident and had been counseled on proper discipline techniques. Well is also a recent college graduate with a degree in Criminal Justice.

that correctly states the law is prejudicial error. Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial. The burden of demonstrating prejudice in failure to give a proposed instruction is on the party contending error.

*State v. Shadbolt,* 1999 SD 15, ¶ 9, 590 N.W.2d 231.

[¶ 13.] **1. WHETHER THE TRIAL COURT ERRED IN ALLOWING DR. KAPLAN TO TESTIFY THAT HE TOOK PICTURES OF B.G. TO USE IN TEACHING ABOUT CHILD ABUSE.**

[¶ 14.] During trial, Dr. Kaplan was called to testify about the injuries B.G. sustained. His testimony was aided by the use of photographs he had taken when B.G. was admitted to the emergency room. In particular, the photographs were used to establish the existence of "pattern injuries" that indicated B.G. was struck with a belt buckle.[2] Dr. Kaplan testified that a "pattern injury is one that takes on the form or shape of the object that inflicts, that is inflicted upon the child, and it creates a certain pattern of injury."

[¶ 15.] In the course of this testimony, the following exchange occurred:

Q: (State's Attorney) Dr. Kaplan, did you take some pictures of B.G. in the emergency room?

A: Yes, I did.

Q: And why did you do this?

A: Well, one of my other hats is teaching. I teach all over the place about child abuse and teach medical students about child abuse.

Ms. Hofer: Objection, Your Honor, this is going to call for a conclusion.

The Court: Overruled. You may proceed doctor.

A: And so there are examples that I have of youngsters who have been injured in a certain way with a certain pattern injuries which are characteristic of abusive injury, then I often document them so that we can teach about them to people in recognition classes, and things like that, and students.

Well asserts that this testimony in effect intruded upon the jury's function by reaching a legal conclusion that Well was guilty of abuse.

[¶ 16.] A trial court's decision to admit expert testimony is controlled by SDCL 19-15-2, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony." *State v. Hill,* 463 N.W.2d 674, 676 (S.D.1990). Dr. Kaplan was not asked nor did he give an opinion as to Well's guilt or innocence. The admission of this testimony was not an abuse of discretion and did not "invade the province of the jury." However, it came close. The testimony provided the jury with the reason the pictures were taken,

---

2. Describing the "pattern injury" Dr. Kaplan used the photographs to identify what he believed to have caused the injury.

[T]he buckle has a remarkably similar curvilinear shape to the injuries themselves, and while when you are hitting somebody things don't match exactly often, it has a very characteristic shape.... Maybe I can show you better, but if you look at the curve on this injury, and again there's also two parallel lines of injury, probably a separate blow, and you can almost—if you look at the belt itself, you can see the parallel to the curvilinear line and even a little piece here of injury which is consistent with where the, I don't know the name of the thing that goes to the hole in the belt, the little thing that goes through the hole in the belt I'll call it, you can almost see that as part of this injury when you look at this and the picture.

which is harmless in itself. It also indicated that Dr. Kaplan believed the injuries sustained by B.G. were characteristic of pattern injuries, as they were consistent with the belt and buckle.

[¶ 17.] Although statements relating to the characteristics of abuse or the cause of physical injuries are permissible to assist the trier of fact, they frequently exceed permissible medical opinion and become impermissible legal opinion. *See Atkins v. State,* 243 Ga.App. 489, 533 S.E.2d 152, 154 (2000); *Stephens v. State,* 774 P.2d 60, 67 (Wyo.1989); *State v. Saldana,* 324 N.W.2d 227, 230–31 (Minn.1982). Here, it would have been preferable to exclude the statements that these injuries were characteristic of "abusive injuries" and taken for classes on "child abuse." But the exchange was background for later valid testimony and was not impermissible or harmful error, especially in the absence of a motion to strike and or admonish.

[¶ 18.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING WELL'S JURY INSTRUCTION REGARDING ALTERNATIVE COUNTS.**

[¶ 19.] Well submitted a jury instruction requesting that if Well was found guilty of one of the aggravated assault charges he could not also be found guilty on the abuse count and vice versa. The trial court denied Well's requested instruction stating that if convicted of both, he would only be sentenced on one so he would not suffer any prejudice. Indeed, the trial court only sentenced Well on the conviction for abuse, a Class 4 felony, and not on aggravated assault, a Class 3 felony.

[¶ 20.] Well argues as a matter of law that the abuse statute precludes a conviction under that statute and the aggravated assault statutes. SDCL 26–10–1 provides in part that "[a]ny person who abuses, exposes, tortures, torments, or cruelly punishes a minor in a manner *which does not constitute aggravated as-*

*sault,* is guilty of a Class 4 felony." (Emphasis added). In contrast, the State cites our decision in State v. Biays as support that a conviction under both statutes is perfectly valid. 402 N.W.2d 697 (S.D. 1987). In essence, both parties are half-right.

[¶ 21.] The State's reliance on *Biays* strains the plain meaning of SDCL 26–10–1. In *Biays,* we held that it was "possible that a person may be found guilty of both aggravated assault of a minor and abuse of that same minor." *Id.* at 700. That possibility only exists when the convictions are based on two separate incidents. *Id.* We recognized that both statutes, abuse and aggravated assault, may be violated in a single transaction, but there must exist different facts to constitute each crime or else SDCL 26–10–1 makes them mutually exclusive. In other words, for the State to maintain separate convictions under the abuse and aggravated assault statutes, they must establish that the charges were the result of separate factual incidents. As recognized in *Biays,* the convictions must be distinguished factually from each other. *See id.* (distinguishing a skull fracture incident constituting aggravated assault from a second incident where the child was abused under SDCL 26–10–1). We recognized that the legislature did not intend two separate punishments for the same crime under these statutes.

[¶ 22.] The State failed to make the case at trial that these counts were supported by separate underlying facts. On appeal, the brief of the State asserts in a footnote that

Here, the several injuries inflicted upon the victim occurred as part of the same incident. As argued, however, by the prosecuting attorney, "[i]t certainly is possible, conceivable *for a person to* commit a number of different crimes in one incident, and the State is alleging in this particular case." *The State would submit that the injuries to the victims head and face constituted "serious bodi-*

*ly injury" for purposes of an aggravated assault conviction. The jury obviously found that, while not constituting aggravated assault, the other injuries inflicted to the victim's arm and legs amounted to abuse or torture of a minor.*

(Emphasis added). We acknowledge the prosecuting attorney's statement during arguments on the proposed instruction that a *possibility* exists that two incidents can occur in single transaction. As indicated, that statement is based on our holding in *Biays*. However, the record does not support the position emphasized in the above footnote in which the state submits that the head injury was separate from other injuries. There is no support in the record that this position was ever raised at trial or argued to the jury. Nor are we cited to any support in the record, or able to find any facts justifying separate charges. An assertion in a footnote on appeal does not satisfy this requirement.[3]

[¶ 23.] Analyzing this issue, we look beyond the parties briefing and to our precedent concerning two convictions for the same crime. It is established law that a defendant cannot receive two convictions for one crime unless the legislature intended multiple punishments. *See State v. Jensen,* 579 N.W.2d 613, 625 (S.D.1998); *State v. White,* 1996 SD 67, 549 N.W.2d 676, 682 (1996); *Wilcox v. Leapley,* 488 N.W.2d 654, 657 (S.D.1992) (*Wilcox II*); *State v. Johnston,* 478 N.W.2d 281, 283 (S.D.1991). In *Wilcox II,* "the same facts and actions committed by Wilcox were used to convict him of [two] statutory offenses." *Wilcox II,* 488 N.W.2d at 656. We unequivocally stated, "[a]t this time, we hold that double homicide convictions for a single death are improper." *Id.* at 657. Likewise, in *Johnston,* we recognized that a single plan to steal numerous cattle

was a single theft absent evidence that the defendant had a separate intent or plan. *Johnston,* 478 N.W.2d at 284. Given the absence of factual evidence or statutory authority, a jury conviction for multiple crimes cannot be supported.[4] Without two separate factual incidents, or statutorily intended multiple punishments for the same facts, two convictions cannot stand.

[¶ 24.] The jury found Well guilty of aggravated assault and abuse. As discussed, these crimes are statutorily defined as mutually exclusive absent evidence supporting two distinct crimes. Therefore, it was an abuse of discretion for the trial court to deny alternative count instructions on aggravated assault and abuse. Simply choosing to sentence Well to one crime did not remedy this. To hold otherwise would impose two felony convictions for a single crime.

[¶ 25.] In issue 3, Well made a motion for judgment of acquittal on the conviction for aggravated assault. It should have been granted. Therefore, we reverse and remand for proceedings consistent with this opinion. In view of the fact that the trial court sentenced Well only for abuse, we vacate the conviction for aggravated assault and remand for determination by the trial court whether the improper conviction for aggravated assault had any effect on the imposed sentence. If it did, he should make an appropriate reduction in said sentence.

[¶ 26.] **3. WHETHER THE TRIAL COURT ERRED IN DENYING WELL'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF AGGRAVATED ASSAULT .**

[¶ 27.] Well asserts that his motion for judgment of acquittal on aggravated assault should have been granted. We agree for the reasons stated under issue 2.

---

**3.** In *Biays,* the State sought to distinguish the two counts from the outset by identifying the specific instances and injuries to which each count applied. There was no such attempt here. *Biays,* 402 N.W.2d at 700.

**4.** It is apparent a defendant can be convicted of aggravated assault and abuse or cruelty, if it were shown that two distinct crimes were committed.

**[¶ 28.] 4. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT WELL'S CONVICTION FOR ABUSE.**

[¶ 29.] Given our disposition of issue 2, we will only address this contention as it relates to the sufficiency of the evidence for the conviction on abuse. Well argues that there is not sufficient evidence beyond a reasonable doubt to sustain a finding of guilt. To sustain the jury's determination of guilt, the State was required to prove beyond a reasonable doubt that Well abused, tormented, exposed or cruelly punished a minor. SDCL 26–10–1. Viewing the evidence in light most favorable to the verdict, it is clear that ample evidence existed to support the jury's determination. *See Knecht*, 1997 SD 53, ¶ 49, 563 N.W.2d 413, 421 (requiring us to determine the sufficiency of the evidence in the light most favorable to the verdict).

[¶ 30.] The testimony of the victim, eyewitness accounts, the physician's testimony, and the defendant's own statements to the arresting officers indicate that sufficient evidence existed to support a finding of guilt.[5]

[¶ 31.] Therefore, we vacate the conviction for aggravated assault and remand for resentencing, if necessary, on the conviction for abuse consistent with this opinion.

[¶ 32.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

---

5. The jury could reasonably have rejected the father's accounts that the most serious injuries occurred from a fall against a table, given the victim's statements that such an occurrence did not happen, and Dr. Kaplan's testimony that the injuries were consistent with a belt and buckle. The victim testified that he was hit in the back of the head and side of the face with the belt buckle.