#27703-a-LSW
**2017 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DIW BOL KIIR,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN R. PEKAS
and
THE HONORABLE SUSAN M. SABERS
Judges

\* \* \* \*

MARTY J. JACKLEY
Attorney General

CULLEN P. MCNEECE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                      and appellee.

RYAN KOLBECK of
Waltner, Kolbeck &
  Scharffenberg, LLP
Sioux Falls, South Dakota                    Attorneys for defendant
                                      and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2017
OPINION FILED **08/02/17**

WILBUR, Retired Justice

[¶1.] A jury found defendant guilty of eight offenses. Defendant appeals the circuit court's admission of res gestae evidence, claiming the evidence violated his Sixth Amendment right of confrontation. Defendant also challenges the sufficiency of the evidence for three offenses. We affirm.

## Background

[¶2.] Officer Chase Vanderhule received a call from dispatch at approximately 8:15 p.m. on May 15, 2015, to respond to a report of an aggravated assault with a firearm at an apartment complex in Sioux Falls, South Dakota. Officer Vanderhule arrived at the apartment complex and made contact with the reporting witnesses. The witnesses spoke to Officer Vanderhule with the help of a Spanish interpreter. The witnesses relayed that a silver, gray, or brown Chevy Impala or Malibu arrived near the area with multiple African American males and one female inside the vehicle. The witnesses claimed that one person from the vehicle tried to sell them drugs. They further claimed that when they refused, one of the African American males pointed a firearm at them. The witnesses reported that this male was wearing a red hat and white t-shirt and was approximately 25 to 30 years old. The witnesses also described the gun—it had a black grip, a silver top, and a slide that racks back. The witnesses told Officer Vanderhule that the vehicle and its occupants left the area after the incident.

[¶3.] While Officer Vanderhule was speaking with the witnesses and reviewing the surveillance footage from the apartment complex, he learned that a male fitting the witnesses' description of the alleged perpetrator was in the area.

Officer Vanderhule immediately called for assistance. He left the witnesses and proceeded to the area where the male was reportedly located. Officer Vanderhule later testified that as he rounded a corner at the apartment complex, he saw a person, later identified as Diw Bol Kiir, who fit the description provided by the witnesses—red hat, white t-shirt, African American male, 25 to 30 years old. The area, according to Officer Vanderhule, had one light and was poorly lit. Officer Vanderhule noticed that Kiir had a cigarette in his hand.

[¶4.]     Officer Vanderhule decided to make contact with Kiir. He attempted to engage Kiir in nonconfrontational conversation. Officer Vanderhule testified that he asked Kiir his name. Kiir gave a false name. The officer also asked Kiir what Kiir was doing at the apartment complex. Officer Vanderhule testified that he asked the question many times before Kiir answered. Kiir claimed that he had arrived to drop off beer to his friend. Officer Vanderhule told Kiir that he was at the complex to investigate an incident and that he wanted to discuss the incident with Kiir. According to Officer Vanderhule, Kiir immediately responded, "No, I wasn't here. No, I wasn't here."

[¶5.]     Officer Vanderhule testified that he had asked Kiir to come with him to the parking lot to talk about why Officer Vanderhule was at the apartment complex. As Kiir was stepping off the stairs onto the sidewalk area, Officer Vanderhule asked Kiir if he had any weapons on him. Kiir responded, "What for?" Officer Vanderhule testified that he asked Kiir the same question again. Kiir responded, "No, I don't have any weapons on me." Officer Vanderhule informed Kiir that he wanted to pat Kiir down to see if he had any weapons. Officer Vanderhule

took a step toward Kiir and according to the officer, Kiir threw his cigarette on the ground, clenched his fists, "and started bouncing up and down as though he were a boxer in a boxing ring about to fight somebody." Officer Vanderhule testified that Kiir said, "No, you are not going to touch me. Do not touch me. Do not come over here and touch me." The officer explained to the jury that he tried to remain calm, keep the peace, and express his desire to Kiir that nothing happen.

[¶6.]    When Kiir did not alter his actions, Officer Vanderhule drew his taser and ordered Kiir to get on the ground. According to Officer Vanderhule, Kiir turned and ran. The officer deployed his taser and the two probes attached to Kiir, causing him to fall onto his stomach. Officer Vanderhule testified that he told Kiir to stay on the ground and to put his hands behind his back. Once Kiir complied, the officer approached Kiir, placed a knee on Kiir's back, and grabbed his handcuffs. After Officer Vanderhule attached a handcuff to Kiir's left hand, Kiir began to resist. Kiir struggled and freed his right hand. According to Officer Vanderhule, Kiir tried to grab the front part of Kiir's pants with his right hand and fought against Officer Vanderhule's attempt to restrain him. Officer Vanderhule testified that the force of Kiir's resistance injured the officer's left hand. Officer Vanderhule activated the taser again when Kiir attempted to bite the officer.

[¶7.]    After being tased, Kiir told Officer Vanderhule he would comply. But according to the officer, Kiir did not. Kiir rotated his body and reached toward his waistband. According to Officer Vanderhule, he tased Kiir three or four more times, but Kiir continued to resist. At this point during the struggle, Officer Vanderhule heard a noise come from around the corner. He looked up and noticed Officer Matt

Dunn. Officer Vanderhule testified that shortly thereafter he placed Kiir's right hand in the handcuff. According to Officer Vanderhule, his struggle to restrain Kiir spanned approximately two minutes. Once Kiir was fully handcuffed, Officer Dunn assisted Officer Vanderhule in lifting Kiir to his feet and moving him approximately five or six feet from where the struggle occurred.

[¶8.] After placing Kiir under arrest, Officer Dunn shined his flashlight in the area of the struggle. He observed a gun. The gun appeared to be consistent with that described by the witnesses reporting the alleged aggravated assault. Officer Vanderhule also noticed a vehicle in the parking lot, which was not there when the officer first arrived, but which matched the one described by the witnesses. The officers had the vehicle towed from the scene. The next day, law enforcement obtained consent from the owner of the vehicle to search it. Officer Patrick Mertes searched the vehicle and found a dark-colored backpack behind the driver's seat. Inside the bag were two jeweler's bags and two scales wrapped in men's underwear. Law enforcement later confirmed the presence of methamphetamine in the jeweler's bags. A bus ticket listing Kiir's name was also in the backpack.

[¶9.] On May 28, 2015, a grand jury issued an eleven-count indictment against Kiir. The indictment alleged that Kiir committed the following offenses: Count 1—aggravated assault against law enforcement; Counts 2-4—alternative counts of simple assault against law enforcement; Count 5—possession of a controlled substance; Count 6—possession of a controlled substance while armed; Count 7—simple assault against law enforcement while armed; Count 8—

possession of a firearm with an altered serial number; Count 9—possession of a firearm by a person with one prior drug conviction; Count 10—grand theft; Count 11—resisting arrest. The State also filed a part II information alleging Kiir to be a habitual offender.

[¶10.]    Kiir filed a motion in limine to "suppress any out-of-court statements not subject to cross-examination" and to "suppress any statements or references regarding allegations of attempted narcotics sales and intimidation with a weapon[.]" In a pretrial hearing, the circuit court ruled that Officer Vanderhule may testify about the statements made to him in the initial report. The court held that the statements provided context and were res gestae evidence. However, the court suppressed any statement by Officer Vanderhule that one of the reporting witnesses told the officer that the witness observed the alleged perpetrator return to the apartment complex. The court held that the out-of-court identification of the defendant required the identifying witness's testimony.

[¶11.]    At the conclusion of a two-day jury trial in October 2015, Kiir moved for a judgment of acquittal on Counts 1 and 9. The court denied the motion. The jury returned a guilty verdict on Counts 2 and 3 and Counts 5 through 10. The State had dismissed Count 11 prior to voir dire. Kiir admitted to the allegations in the part II information. The court sentenced Kiir to two years on Count 2, three years on Counts 8 and 10, four years on Counts 5 and 9, and ten years with three suspended on Count 6. The court did not impose a sentence for Count 7. The court ordered the sentences for Counts 2, 5, 8, 9, and 10 to run concurrent with one

another while the sentence for Count 6 was to run consecutively to the concurrent sentences as mandated by statute. *See* SDCL 22-14-12.

[¶12.]     Kiir appeals, asserting the following issues:

1.  Whether the testimony and argument regarding the initial report was proper res gestae evidence.

2.  Whether the evidence was sufficient to support the conviction of possession of a controlled substance while armed with a firearm.

3.  Whether the evidence was sufficient to support the conviction of simple assault on a law enforcement officer while armed with a firearm.

4.  Whether the evidence was sufficient to support the conviction of possession of a controlled substance.

## Analysis

### 1.  Res gestae evidence

[¶13.]     Kiir asserts that the State transformed the contextual statements made by the witness reporters to Officer Vanderhule into inadmissible hearsay in violation of Kiir's Sixth Amendment rights. The witnesses did not testify, and according to Kiir, the State used the witnesses' hearsay statements to prove the truth of the matters asserted. Kiir admits that certain statements by the witnesses were admissible to explain Officer Vanderhule's actions. But he argues that the State went too far when the State used the witnesses' statements to prove that Kiir was armed with a firearm prior to his interaction with Officer Vanderhule and was associated with the vehicle containing the backpack with methamphetamine.

[¶14.]     We review the circuit court's evidentiary rulings for an abuse of discretion. *State v. Goodroad*, 1997 S.D. 46, ¶ 9, 563 N.W.2d 126, 129. The circuit

court denied Kiir's request to suppress witness statements made to Officer Vanderhule, finding that those statements were res gestae evidence explaining Officer Vanderhule's thoughts and actions. We have said that "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Johnson*, 2009 S.D. 67, ¶ 23, 771 N.W.2d 360, 269 (quoting *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). Therefore, "[w]hen out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the out-of-court statement." *Id.* We have also said that the res gestae rule "permits the admission of evidence that is 'so blended or connected' in that it 'explains the circumstances; or tends logically to prove any element of the crime charged.'" *State v. Wright*, 2009 S.D. 51, ¶ 55, 768 N.W.2d 512, 531 (quoting *State v. Owen*, 2007 S.D. 21, ¶ 15, 729 N.W.2d 356, 363). The evidence is admissible even though it sometimes implicates the defendant in other acts. *See United States v. LaDue*, 561 F.3d 855, 858 (8th Cir. 2009).

[¶15.]     Here, the circuit court admitted out-of-court statements through Officer Vanderhule's testimony. The officer repeated the witnesses' statements made to him when testifying about his reason for arriving at the apartment complex and his reason for approaching Kiir. Kiir had an opportunity to cross-examine Officer Vanderhule about the statements made to him. From our review of Officer Vanderhule's testimony, the witnesses' statements were inextricably intertwined with the charged crime so as to constitute res gestae evidence and were not offered

to prove the truth of the matter asserted. The statements explained why Officer Vanderhule was at the apartment complex and why the officer engaged Kiir in conversation. The witnesses' statements also gave context to why Officer Vanderhule exercised heightened caution during his interaction with Kiir. The witnesses' statements also informed the jury why Officer Vanderhule believed the vehicle in the parking lot might be associated with Kiir. *See, e.g., State v. Stark*, 2011 S.D. 46, ¶ 26, 802 N.W.2d 165, 173 (information about an informant's tip was necessary for the jury to hear to give context in the case and explain why defendant was being followed).

[¶16.] Nonetheless, Kiir claims that the circumstances of this case are akin to those in *State v. Johnson*, 2009 S.D. 67, 771 N.W.2d 360. In *Johnson*, we held that, although an officer's testimony about statements made to him properly gave context to the circumstances, the State's argument to the jury violated the defendant's Sixth Amendment right of confrontation. *Id.* ¶ 24. The State's argument converted the res gestae evidence to hearsay statements used to prove the truth of the matter asserted—that the defendant sold the drugs because the declarant witness told the detective that the defendant sold the drugs. *Id.* Here, however, the prosecutor did not use the witnesses' statements to prove the truth of the matters asserted. The prosecutor did not argue that Kiir in fact pointed a gun at the witnesses when they refused to buy the drugs offered. The prosecutor also did not argue that Kiir was in fact an occupant in the vehicle. Instead, the prosecutor's opening and closing remarks aligned with Officer Vanderhule's testimony giving context to the

circumstances related to the crimes charged. The circuit court did not abuse its discretion when it admitted the witnesses' statements as res gestae evidence.

### 2. Conviction of possession of a controlled substance while armed with a firearm.

[¶17.] Kiir argues that there is insufficient evidence to prove that he was armed *while possessing a controlled substance.* He emphasizes that the gun was found near the area he and Officer Vanderhule struggled but that the drugs were found in a backpack in a vehicle in the parking lot away from any association with Kiir. He argues that no evidence, circumstantial or otherwise, establishes that he did anything other than merely possess a gun while also being in possession of a controlled substance. Kiir did not move for a judgment of acquittal on this charge at the conclusion of the case. He, however, asks this Court to invoke plain error review. He claims that counsel's failure to make "an argument that could have prevented the allegation from going to the jury for deliberation is *per se* prejudicial and proper for plain error consideration."

[¶18.] "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23A-44-15 (Rule 52(b)). To establish plain error, Kiir must show "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if (4) it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d 816, 822 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443). "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (quoting *State v.*

*Davi*, 504 N.W.2d 844, 855 (S.D. 1983)). Also, as the party asserting the error, Kiir bears the burden of proving that the error was prejudicial. *Id.* ¶ 7.

[¶19.]    In his brief to this Court, Kiir specifically asserts that error occurred and that prejudice exists because the evidence is wholly insufficient to support the verdict. But he also indirectly argues that prejudicial error occurred because his trial counsel did not move for a judgment of acquittal on this charge, which would have preserved Kiir's argument against the sufficiency of the evidence on appeal. We rarely consider a claim of ineffective assistance of counsel on direct appeal. *State v. Thomas*, 2011 S.D. 15, ¶ 20, 796 N.W.2d 706, 713. This is because on direct appeal, trial counsel is unable to explain or defend actions and strategies and give a more complete picture of what occurred for our review. *Id.* ¶ 23. However, we have recognized that this Court "may consider unpreserved issues in certain cases involving claims of ineffective assistance of counsel." *Id.* ¶ 20. We do so "only when trial counsel was 'so ineffective and counsel's representation so casual as to represent a manifest usurpation of the defendant's constitutional rights.'" *Id.* ¶ 23 (quoting *State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256).

[¶20.]    To determine whether we should consider Kiir's claim that counsel was ineffective, we examine his conviction for possession of a controlled substance while armed with a firearm. In *State v. Chavez*, we recognized that SDCL 22-14-12 is "designed to discourage firearm use and decrease the probability of serious bodily harm to felony victims." 2002 S.D. 84, ¶ 13, 649 N.W.2d 586, 592 (quoting *State v. Simons*, 313 N.W.2d 465, 467 (S.D. 1981)). "It is a gun control statute that mandates additional punishment if a firearm is *used* in the perpetration of the

predicate felony." *Simons*, 313 N.W.2d at 467 (emphasis added). In our review of the record, the evidence does not support that Kiir used or attempted to use a firearm in the commission of his offense of possessing a controlled substance. No officer testified that he or she observed Kiir use or attempt to use a gun while Kiir possessed the drugs. Also, no other testifying witnesses claimed to have observed Kiir use or attempt to use a gun while in possession of the drugs. *See State v. Cook*, 319 N.W.2d 809, 813 (S.D. 1982) ("The purpose of the statute . . . would not be furthered by applying this statute to the situation before us.").

[¶21.]      Because the evidence is lacking to support the jury's guilty verdict on the charge of possession of a controlled substance while armed with a firearm, had Kiir's trial counsel moved for a judgment of acquittal, the circuit court should have granted it. This suggests, then, that trial counsel erred. But before we will review Kiir's claim of ineffective counsel on direct appeal, Kiir must establish that "trial counsel was 'so ineffective and counsel's representation so casual'" that counsel's representation constituted "a manifest usurpation of the defendant's constitutional rights." *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714 (quoting *Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d at 256).

[¶22.]      We consistently state that "[t]he preferable means to consider incompetent counsel claims is through habeas corpus proceedings." *State v. Petersen*, 515 N.W.2d 687, 688 (S.D. 1994) (quoting *State v. Aliberti*, 401 N.W.2d 729, 732 (S.D. 1987)). Indeed, it is through habeas that this Court may obtain a more complete picture of what occurred for review. *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714. On this record, we are unable to obtain a complete picture to

examine counsel's reason for not moving for a judgment of acquittal. We, therefore, decline to consider Kiir's claim of ineffective assistance of counsel claim on direct appeal.

[¶23.]       We also decline to invoke our plain error review under the circumstances. The State indicted Kiir on two counts of violating SDCL 22-14-12—committing or attempting to commit a felony armed with a firearm. The jury found Kiir guilty on both counts, and as we conclude in the next issue, the evidence is sufficient to support the jury's verdict for Count 7. At the sentencing hearing, however, the court indicated that it would sentence Kiir on only one of the offenses under SDCL 22-14-12. The court said, "And between Counsel, is there any rhyme or reason whether I pick . . . Count VI or VII among the firearms?" Both counsel for the State and for Kiir responded that neither believed it made a difference. The court then sentenced Kiir for Count 6 and imposed no sentence for the jury's guilty verdict for Count 7. To the court, it did not make a difference on which conviction it sentenced Kiir—it intended to sentence Kiir to 10 years in prison. This does not mean "we simply substitute the sentence imposed for Count 6 for a sentence on Count 7" or that we "engage in the sentencing function, which is the exclusive province of the trial court." *See* Dissent ¶ 34. On the contrary, the question is whether this case presents exceptional circumstances warranting this Court's discretion under plain error. *See Henjum*, 1996 S.D. 7, ¶ 14, 542 N.W.2d at 763. Because the evidence supports that Kiir violated SDCL 22-14-12, and because Kiir received one sentence for his crime under that statute, we decline to exercise our discretion under plain error. *See id.*

### 3. Conviction of simple assault on a law enforcement officer while armed with a firearm.

[¶24.] Kiir similarly asserts that the evidence is insufficient to support the conviction for assaulting Officer Vanderhule while armed with a firearm. Kiir did not move for a judgment of acquittal. He again asks us to invoke plain error review. This we decline to do. There is no evidence of an error. *See Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d at 822 (plain error review requires an error that is plain). Kiir does not challenge the jury's conclusion that he committed a simple assault against Officer Vanderhule. And, when viewing the evidence in a light most favorable to the jury's verdict, the evidence at trial supports that Kiir attempted to use a firearm against Officer Vanderhule's efforts to restrain Kiir. *State v. Pellegrino*, 1998 S.D. 39, ¶ 20, 577 N.W.2d 590, 598 (we "accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict" (quoting *State v. Hart*, 1996 S.D. 17, ¶ 8, 544 N.W.2d 206, 208)).

[¶25.] Nonetheless, the dissent suggests that we remand Count 7 to the circuit court so that it may impose a sentence. On the contrary, whether this Court can remand Count 7 to the circuit court for sentencing is not before us. Even so, *State v. Well*, cited by the dissent, does not support remand in this case. 2000 S.D. 156, ¶ 25, 620 N.W.2d 192, 197. In *Well*, the defendant preserved his claimed error by moving for a judgment of acquittal, and we concluded that the circuit court should have granted the motion. We reversed the conviction for which the circuit court had imposed *no sentence* and remanded for a possible *reduction* in sentence. Here, on the other hand, Kiir did not preserve his error for our review, we are

affirming Kiir's conviction on Count 7, and Kiir did not request that he receive a sentence for Count 7 had we reversed his conviction on Count 6.

### 4. Conviction of possession of a controlled substance.

[¶26.] Kiir claims there is insufficient evidence to support that he possessed a controlled substance because the backpack containing methamphetamine was not in Kiir's possession, and the State offered no evidence that Kiir had knowledge of the presence of the drugs. Kiir contends that the only way to link him to the drugs would be to link him to the vehicle. He then argues that the State presented no evidence associating him with the vehicle except the res gestae evidence from the witness reporters.

[¶27.] Kiir asserts that we are to review his argument de novo. But Kiir did not move for a judgment of acquittal on this charge. Therefore, Kiir must establish that he is entitled to plain error review. From our review, there is no error. The evidence, viewed in the light most favorable to the prosecution, supports that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). We give "circumstantial and direct evidence equal weight," and recognize that "circumstantial evidence can be more reliable than direct evidence." *State v. Laplante*, 2002 S.D. 95, ¶ 32, 650 N.W.2d 305, 313. Here, the State presented evidence of incriminating circumstances from which the jury could infer Kiir's knowledge of the presence of drugs in the backpack and the ability to control them. Because this evidence and the reasonable inferences to be drawn from the evidence sustain a rational theory of guilt, Kiir has failed to establish plain

error. *See State v. Guthrie*, 2001 S.D. 61, ¶ 47, 627 N.W.2d 401, 420 (discussing the standard on a claim of insufficient evidence).

[¶28.] Affirmed.

[¶29.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, concur.

[¶30.] KERN, Justice, concurs in part and dissents in part.


KERN, Justice (concurring in part and dissenting in part).

[¶31.] I concur in Issues 1, 3, and 4, but respectfully dissent on Issue 2. I would notice the plain error and remand to the trial court to vacate the conviction for Count 6 and sentence Kiir for the conviction on Count 7. I would do so for the sake of judicial economy and because sustaining a conviction that is not supported by the evidence affects the integrity of the justice system.

[¶32.] Kiir was prejudiced by his counsel's failure to move for a judgment of acquittal on Count 6. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068-69, 80 L. Ed. 2d 674 (1984); *see also State v. Thomas*, 2011 S.D. 15, ¶ 28, 796 N.W.2d 706, 715. It is undisputed that there was insufficient evidence to support the conviction on Count 6. And, absent counsel's error to move for a judgment of acquittal, no reasonable factfinder could have found Kiir guilty on Count 6. Because the evidence is wholly lacking to support the jury's guilty verdict on Count 6, we need not wait for trial counsel to explain her actions or

strategies in not moving for a judgment of acquittal. *See Thomas*, 2011 S.D. 15, ¶¶ 23-25, 796 N.W.2d at 714. In fact, trial counsel specifically requested a judgment of acquittal on other counts, and there is no conceivable strategic benefit in failing to request a judgment of acquittal on this count. Kiir has met the high burden of establishing on direct appeal that his trial counsel was ineffective.

[¶33.] Further, the circumstances of this case constitute plain error. The Eighth Circuit Court of Appeals has explained that "where it clearly appears in a criminal case that a defendant has been convicted of an offense which the evidence fails to show was committed, the error of submitting the case to the jury for determination is so plain and vital that this court is at liberty to and will reverse even in the absence of a proper motion and exception, not because the defendant has a right to demand a reversal, but solely in the public interest and to guard against injustice." *Cox v. United States*, 96 F.2d 41, 43 (8th Cir. 1938). I agree with the Eighth Circuit's reasoning and would notice plain error in this case.

[¶34.] The majority contends that there was no plain error in this case because the trial court could have sentenced Kiir on either Count 6 or Count 7. Kiir's convictions on Counts 6 and 7 were for violating SDCL 22-14-12. That statute provides:

> Any person who commits or attempts to commit any felony while armed with a firearm, including a machine gun or short shotgun, is guilty of a Class 2 felony for the first conviction. A second or subsequent conviction is a Class 1 felony. The sentence imposed for a first conviction under this section shall carry a minimum sentence of imprisonment in the state penitentiary of five years. In case of a second or subsequent conviction under this section such person shall be sentenced to a minimum imprisonment of ten years in the penitentiary.

> Any sentence imposed under this section shall be consecutive to any other sentences imposed for a violation of the principal felony. The court may not place on probation, suspend the execution of the sentence, or suspend the imposition of the sentence of any person convicted of a violation of this section.

Although the trial court only sentenced Kiir on Count 6, it sentenced him to ten years imprisonment with the sentence to run consecutively to Kiir's other sentences.[1] The majority proposes by implication that we simply substitute the sentence imposed for Count 6 for a sentence on Count 7. The majority's approach is problematic because this Court does not engage in the sentencing function, which is the exclusive province of the trial court. Moreover, it is unclear what effect the erroneous conviction on Count 6 may have had on the trial court's sentencing decision.

[¶35.] In *State v. Well*, 2000 S.D. 156, 620 N.W.2d 192, the defendant was convicted of both aggravated assault and abuse or cruelty to a minor. The trial court sentenced him on the abuse conviction but did not impose a sentence for the aggravated assault conviction. *Id.* ¶ 9, 620 N.W.2d at 194. On appeal, this Court vacated the conviction for aggravated assault. *Id.* ¶ 25, 620 N.W.2d at 197. We remanded to the trial court to determine whether "the improper conviction for aggravated assault had any effect on the imposed sentence," and if it did, to "make an appropriate reduction in said sentence." *Id.* Likewise, in this case, I would

---

1. The court suspended three years of the sentence.

remand to the trial court to determine whether the erroneous conviction on Count 6 would have any effect on a sentence imposed for Count 7.[2]

[¶36.] Kiir has made the rare showing on direct appeal of both ineffective assistance of counsel and plain error. However, just as it is untenable that Kiir should remain incarcerated on a conviction that was not supported by the evidence, it is equally untenable that Kiir should go unpunished for the crime that he was rightfully convicted of but no sentence was imposed. I would notice the plain error and remand to the trial court to vacate the conviction for Count 6 and sentence Kiir for the conviction on Count 7. Kiir's continued incarceration on an erroneous and prejudicial conviction and sentence while he applies for *inevitable* post-conviction relief "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Hayes*, 2014 S.D. 72, ¶ 25, 855 N.W.2d 668, 675 (setting forth the required showing for plain error).

---

2. The Double Jeopardy Clause is not implicated by remanding this case for sentencing on Count 7. The Double Jeopardy Clause "is written in terms of potential or risk of trial and conviction, not punishment." *Schiro v. Farley*, 510 U.S. 222, 231, 114 S. Ct. 783, 790, 127 L. Ed. 2d 47 (1994) (quoting *Price v. Georgia*, 398 U.S. 323, 329, 90 S. Ct. 1757, 1761, 26 L. Ed. 2d 300 (1970)). "The pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.'" *Monge v. California*, 524 U.S. 721, 729, 118 S. Ct. 2246, 2251, 141 L. Ed. 2d 615 (1998) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S. Ct. 426, 436, 66 L. Ed. 2d 328 (1980)). As such, the general rule is "that double jeopardy principles have no application in the sentencing context." *Id.* at 730.