**STATE of South Dakota, Plaintiff and Appellee,**

v.

**James Michael SIMONS, Defendant and Appellant.**

**No. 13170.**

Supreme Court of South Dakota.

Argued March 24, 1981.

Decided Dec. 16, 1981.

the State charged appellant with murder, SDCL 22–16–4 and commission of a felony while armed. The trial court imposed consecutive sentences each for the maximum term. On appeal, appellant claims the trial judge erred by admitting prejudicial photos into evidence, specially instructing the jury on appellant's credibility and violating his constitutional and statutory rights against double jeopardy when it tried and sentenced him for two crimes which are the same offense. We affirm.

Appellant admitted firing two gunshots which caused his father's death. Appellant's family history involved fights and quarrels usually concerning the victim's drinking and mistreatment of his wife, appellant's mother. The details of the argument that precipitated the killing are immaterial to the issues on appeal except insofar as appellant used a handgun to kill his father.

First we examine appellant's contention that his constitutional and statutory rights against double jeopardy were violated when the State charged him, in separate informations, with both murder, SDCL 22–16–4, and commission of a felony while armed with a firearm, SDCL 22–14–13; and again, when he received consecutive sentences for guilty verdicts of second-degree manslaughter; SDCL 22–16–20, and commission of a felony while armed, SDCL 22–14–13. We disagree.

Leann Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Keith R. Strange of Strange & Strange, and Chris M. Beasley, Legal Intern, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

This appeal stems from the jury conviction of James Michael Simons (appellant) for manslaughter in the second degree, SDCL 22–16–20, and commission of a felony while armed, SDCL 22–14–13.[1] Originally,

Appellant cites us to the holdings of the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), for the proposition that double jeopardy permits multiple charges for a single act only if each statute requires proof of an additional fact which the other does not. He argues that the allegation in the murder information of using a firearm, or the finding by the jury of

1. South Dakota Codified Laws 22–14–12 proscribes the use of a machine gun or short shotgun in the commission or attempt to commit any felony. Similarly, SDCL 22–14–13 prohibits the use of a firearm other than a machine gun or short shotgun. The distinguishing fea-

ture between the two statutes is the severity of punishment for conviction. Both provide for consecutive sentences. For the purpose of this discussion we will describe SDCL 22–14–12 simply as commission of a felony while armed with a firearm.

reckless use of a firearm to sustain the second-degree manslaughter conviction coincide with the necessary elements of commission of a felony while armed with a firearm. He buttresses this argument with SDCL 22–14–14, which states, in pertinent part, "No offense may be charged under [SDCL 22–14–13] when the use of a dangerous weapon is a necessary element of the principal felony alleged to have been committed or attempted."

We find appellant's reliance on *Blockburger* and *Whalen* somewhat misplaced, since these cases are distinguishable from the present case. One lesson these cases teach, however, is summarized in *Albernaz v. United States*, 450 U.S. 336, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). "The question of what punishments are constitutionally permissible is no different from the question of what punishments the legislative branch intended to be imposed."

■ Here, the question becomes—what was the legislative intent in enacting SDCL 22–14–13 and 14? These statutes are of a distinctly different genre than the statutes considered in *Blockburger* (sale of marijuana not in the original sealed package and sale of marijuana without a written order) and in *Whalen* (rape and killing in the perpetration of rape). Pure and simple, SDCL 22–14–13 is an enhancement statute designed to discourage firearm use and decrease the probability of serious bodily harm to felony victims. *Mack v. State*, 312 A.2d 319 (Del.1973). It is a gun control statute that mandates additional punishment if a firearm is used in the perpetration of the predicate felony. As such, it is akin to the gun control legislation considered by the United States Supreme Court in *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), and *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

In *Simpson*, defendant was charged under 18 U.S.C. § 2113(a) for commission of a bank robbery and 18 U.S.C. § 2113(d) for bank robbery using a dangerous weapon or device. Additionally, he was charged with use of a firearm to commit a felony. 18 U.S.C. § 924(c). The Supreme Court noted that both 18 U.S.C. § 2113(d) and § 924(c) were enhancement provisions for the use of firearms. The sections addressed identical concerns and were designed to combat the use of dangerous weapons—more particularly firearms—to commit federal felonies. Ibid., 435 U.S. at 11, 98 S.Ct. at 912. Thus, the defendant's double jeopardy rights were violated.

In reaching this holding the Court examined the legislative history of 18 U.S.C. § 924(c) and concluded that it demonstrated no congressional intent to pile enhancement upon enhancement. The Court continued its reasoning applying established rules of legislative construction, not double jeopardy considerations. It deduced that to construe the statutes to allow enhancement of a sentence already enhanced would violate the established rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Simpson v. United States*, 435 U.S. at 15, 98 S.Ct. at 914.

The Court reached a like result in *Busic*, 446 U.S. at 398, 100 S.Ct. at 1747, where the defendant was charged under 18 U.S.C. § 111. This provision makes it unlawful to assault a federal officer and provides for enhanced punishment when the assailant used a deadly weapon. The defendant was also charged with violating 18 U.S.C. § 924(c), use of a firearm to commit a felony. The Court referred to the *Simpson* decision and stated again, that prosecution and enhanced sentencing under 18 U.S.C. § 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision. *Busic v. United States*, 446 U.S. at 408–409, 100 S.Ct. at 1754.

■ We examine this issue in the light of *Simpson* and *Busic*. The elements of the murder statute, SDCL 22–16–4, are; (1) A homicide, (2) perpetrated without authority of law, and (3) with premeditation, or when committed by a person engaged in the perpetration of specified offenses not pertinent here. While the use of a firearm was necessarily alleged in the information, it is

not an element of the statutory offense of murder because a homicide can be perpetrated by myriad means.

■ Unlike *Simpson* and *Busic*, in South Dakota the homicide offenses are not enhanced because the perpetrator used a firearm. Although implicitly the degrees of homicide contain an enhancement scheme, it is based on rankings of intent, not use of a firearm. Identical enhancement provisions are not pyramided in charging murder and commission of a felony while armed. Moreover, the provisions of SDCL 22–14–14 were not violated since its caveat refers to the use of a dangerous weapon as a necessary element of a principal felony. In essence, this is merely a statutory enactment of the *Simpson* rule.

Next we examine the appellant's claim of error in giving the following instruction:

### Jury Instruction 31

Under the law of this state, a defendant in a criminal case is permitted to go upon the witness stand and testify in his own behalf, and the fact that he is the defendant is not in itself sufficient to impeach his testimony or ground for disregarding it, but in determining what weight you will give his testimony, you have the right to take into consideration his interest in the result of the case and that he is the defendant on trial testifying on his own behalf.

This court has approved instruction # 31 as early as *State v. Sonnenschein*, 37 S.D. 585, 159 N.W. 101 (1916), and as recently as *State v. DuBois*, 301 N.W.2d 425, 426 (S.D. 1981). These decisions demonstrate that the instruction itself cautions the jury that "the fact that he is the defendant is not in

itself sufficient to impeach his testimony or ground for disregarding it[.]"

■ The Eighth Circuit Court of Appeals, however, criticized the instruction in *United States v. Standing Soldier*, 538 F.2d 196 (8th Cir. 1976). That court said, "[w]e reiterate our preference that a 'defendant not be singled out' . . . especially in a case where much depends upon the defendant's credibility." *Id.*, at 204. Yet, it refused to ban the instruction as unconstitutional, or, in the circumstances of that case, even prejudicial. We agree with the Eighth Circuit's view. We also recommend that, in the future, trial courts refrain from giving such an instruction to avoid completely any question of prejudice.

■ In the instant case we also hold that the giving of the instruction was not prejudicial. The jury was instructed properly and adequately on the weight and credibility of the evidence.[2] We hold that the giving of instruction # 31 did not constitute prejudicial error.

Finally, appellant claims error in the admission into evidence of certain color photographs of the victim's body when the means and manner in which the death occurred was not in issue. The State was prepared to offer into evidence ten photographs. Defense counsel moved to suppress all photographs arguing that they were not relevant to any material issue. Instead, they merely depicted a dead body lying on the floor "with part of the head blown away."

■ In *State v. Rash*, 294 N.W.2d 416, 418–419 (S.D.1980) quoting *State v. Compton*, 48 S.D. 430, 433, 205 N.W. 31, 32 (1925), we discussed admitting into evidence colored photographs of the victim's injuries.

2. Jury Instruction No. 35 read, in pertinent part,

In determining the weight to be given to the testimony of the several witnesses, you may take into consideration the intelligence of the witness; the opportunity for seeing and knowing the things about which such witness has testified; the interest of the witness in the result of the case, if any; the conduct and demeanor of the witness while testifying, and his apparent fairness or bias, if any such appears. You may also take into consideration the appearance of the witness while on the

stand, the reasonableness of his story, and all of the evidence, facts, and circumstances shown, tending to corroborate or contradict such witness.

You should give to the testimony of every witness such weight and credit as to you it seems justly entitled to receive. If you believe from all the evidence that any witness has willfully sworn falsely to any material fact, you are at liberty to disbelieve that witness in whole or in part, taking into consideration all of the evidence in the case.

"[P]hotographs are admissible into evidence 'when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue.' Photographs are not inadmissible simply due to the fact that the details of the crime are vividly brought to the jury's attention or because they 'incidentally tend to arouse passion or prejudice.' Like any other demonstrative evidence, the admission of photographs lies within the sound discretion of the trial court."

*State v. Kaseman*, 273 N.W.2d 716, 726 (S.D.1978) (citations omitted). See also *State v. Kane*, 266 N.W.2d 552 (S.D.1978); *State v. Disbrow*, 266 N.W.2d 246 (S.D. 1978); *State v. Miller*, 248 N.W.2d 56 (S.D.1976); *State v. Satter*, 90 S.D. 485, 242 N.W.2d 149 (1976); *State v. Aschmeller*, 87 S.D. 367, 209 N.W.2d 369 (1973); *State v. Zemina*, 87 S.D. 291, 206 N.W.2d 819 (1973); *State v. Austin*, 84 S.D. 405, 172 N.W.2d 284 (1969); and *State v. Zobel*, 81 S.D. 260, 134 N.W.2d 101 (1965).

In all of these cases this court found that the pictures, slides, or X-rays were all properly admissible. This was true even if the pictures were somewhat gruesome, cumulative, or capable of arousing passion or prejudice in the jury.

At the hearing on the motion, the State argued that each individual photograph was admissible for specific reasons; i.e., to depict the relationship of the body to the surroundings, to show the wounds, and to support the pathologist's testimony. The trial court examined and ruled on each proposed exhibit individually. It suppressed four of the ten exhibits. We have examined his rulings and cannot say that he abused his discretion.

We note that after the case was argued orally, appellant sent to the court and requested the filing of, what, at best, is dubbed a supplemental brief. It attacked the character of the trial judge and his family, and made assertions of the conduct of trial and appellate counsel unsupported by any record before us. At most, it attempted to rehash some points that were adequately covered in the appellant's brief. We can excuse to some extent this diatribe from one who is facing a considerable prison sentence. Nevertheless, we point out that such efforts are unavailing in the context of a criminal appeal, and so advise those who attempt to do likewise in the future. Such claims of error or prejudice, allegedly not adequately covered in the appellant's trial and appeal, are handled best by proceeding for post-conviction relief. SDCL ch. 23A–34.

We affirm the judgment of conviction.

All the Justices concur.