2001 SD 82

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Brian Todd MACHMULLER, Defendant and Appellant.**

No. 21596.

Supreme Court of South Dakota.

Argued March 19, 2001.

Decided June 27, 2001.

Mark Barnett, Attorney General, John M. Strohmann, Assistant Attorney General, Pierre, SD, for plaintiff and appellee.

John Harmelink, Yankton, SD, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] In this appeal we hold that the magistrate court erred in excluding the South Dakota Driver's License Manual as evidence and in failing to allow a doctor to testify as an expert witness.

## FACTS

[¶ 2.] Brian Machmuller was convicted by a magistrate court jury for second offense driving under the influence of alcohol (DUI). He appealed to the circuit court which affirmed the conviction. We reverse and remand.

[¶ 3.] At approximately 5:40 p.m. on the afternoon of May 12, 1999, a Yankton police officer saw a pickup pull out of a gas station parking lot in front of an on-coming vehicle. The pickup's failure to yield nearly caused an accident and the officer turned his patrol car around and pursued the vehicle for a time before bringing it to a stop at Machmuller's residence. After the stop, the officer approached the driver, later identified as Machmuller, and asked him for his driver's license, registration and proof of insurance. After examining the documents, the officer asked Machmuller to accompany him to his patrol car. On their way to the car, the officer noted Machmuller's unsteady gait and, once seated in the vehicle, he also noted the "strong odor" of an alcoholic beverage on Machmuller's breath.

[¶ 4.] When asked by the officer if he had been drinking, Machmuller replied that he had had three or four cocktails after work. The officer also observed other indicia of intoxication in Machmuller's manner and appearance including blood-shot and watery eyes and slurred speech. The officer then had him perform a series of field sobriety tests which he failed.

[¶ 5.] Based upon his observations, coupled with Machmuller's admissions and the results of the field sobriety tests, the officer formed the opinion that Machmuller had been driving under the influence of an alcoholic beverage and placed him under arrest. He read Machmuller the implied consent warnings contained in SDCL 32–

23–10 [1] and Machmuller refused to submit to a blood test. Machmuller was later indicted for one count of DUI. *See* SDCL 32–23–1(2).[2] A part two information was also filed charging him with second offense DUI.

[¶ 6.] A jury trial was held before Magistrate Judge Bruce Anderson. During trial, the prosecution presented testimony from the arresting officer concerning his observations of Machmuller on the afternoon of the arrest. The officer also testified that, based upon his observations, he formed the opinion that Machmuller had been driving while under the influence of an alcoholic beverage. During the defense portion of the case, Machmuller's counsel presented testimony from several witnesses concerning the number of drinks Machmuller consumed after work on the afternoon of his arrest. His counsel also offered a South Dakota Driver's License Manual into evidence. The manual contained a chart projecting blood alcohol levels based upon weight, number of drinks consumed and rates of alcohol absorption over various periods of time. In addition, his counsel offered testimony from a doc-tor of internal medicine concerning Machmuller's estimated blood-alcohol content at the time of his arrest based upon the number of drinks consumed and the chart contained in the driver's license manual. The magistrate court excluded the manual and also the testimony of the doctor finding that he was not qualified to testify as an expert in the matter.

[¶ 7.] The jury returned a verdict finding Machmuller guilty of DUI and he admitted the allegations of the part two information for second offense DUI. The court sentenced him to one year in the county jail and a one thousand dollar fine. One-half the fine and two hundred sixty five days of the jail sentence were suspended on various terms and conditions. As noted earlier, Machmuller appealed his conviction to the circuit court which affirmed. Machmuller now appeals to this Court.

## ISSUE ONE

[¶ 8.] **Did the court abuse its discretion in excluding the South Dakota Driver's License Manual as evidence?**

1. SDCL 32–23–10 provides:

   Any person who operates any vehicle in this state is considered to have given consent to the withdrawal of blood or other bodily substance and chemical analysis of the person's blood, breath, or other bodily substance to determine the amount of alcohol in the person's blood and to determine the presence of marijuana or any controlled drug or substance.
   The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of the person's breath and shall be advised by the officer that:

   (1) If the person refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless the person has been arrested for a third, fourth, or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or 32–23–4.6;

   (2) If the person refuses to submit to the withdrawal or chemical analysis, the person's driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 the person pleads guilty to a violation of § 32–23–1 or § 32–23–21, prior to a revocation order being issued; and

   (3) The person has the right to have a chemical analysis performed by a technician of the person's own choosing at the person's own expense, in addition to the test requested by the officer.

2. SDCL 32–23–1(2) provides:

   A person may not drive or be in actual physical control of any vehicle while:

   * * *

   (2) Under the influence of an alcoholic beverage[.]

■ [¶ 9.] The magistrate court excluded the South Dakota Driver's License Manual because it was not dated and because Machmuller's doctor was not a qualified expert and could not provide the scientific foundation to establish it contained data necessary for his opinion. Machmuller argues the court abused its discretion in excluding the manual. We agree.

> Our standard of review of "a trial court's evidentiary ruling is that of abuse of discretion." *State v. Bailey*, 1996 SD 45, ¶ 34, 546 N.W.2d 387, 394 (citations omitted). An abuse of discretion is " 'discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Larson v. Kreiser's, Inc.*, 472 N.W.2d 761, 764 (S.D.1991)(quoting *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984)).

*Bad Wound v. Lakota Community Homes, Inc.*, 1999 SD 165, ¶ 6, 603 N.W.2d 723, 724–725. *Accord State v. Holzer*, 2000 SD 75, ¶ 11, 611 N.W.2d 647, 650 (trial court's evidentiary rulings are presumed correct and we review them under an abuse of discretion standard). " 'The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion' " *Id.* (quoting *State v. Oster*, 495 N.W.2d 305, 309 (S.D.1993)).

■ [¶ 10.] Here, we hold that the court abused its discretion in excluding the driver's license manual for lack of sufficient authentication (*i.e.*, a date and supporting expert testimony). SDCL 19–17–6 (Rule 902(5)) provides that, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to books, *pamphlets*, or other publications purporting to be issued by public authority." (emphasis added). In discussing the federal counterpart to this rule, it has been written that:

> The scope of Rule 902(5) broadly extends to books, *pamphlets*, and all other publications purporting to be issued by a public authority. While the provision does not define the term, "publication," there is no reason to assume that the drafters had anything other than the commonly employed meaning in mind: a writing produced in multiple copies for distribution to persons beyond those involved in the creation of the writing ...
> Accordingly, Rule 902(5) has been applied to a wide range of official publications including court reports, collections of statutes and ordinances, legislative history, regulations, governmental studies or reports, *manuals*, maps, videotapes, directories, and the like....

\* \* \*

Rule 902(5) applies to items "purporting to be issued by public authority." This means that an item must bear on its face some indicia of official origin to qualify for self-authentication under this provision. This may include an explicit statement that the item was issued by a public authority, a facsimile of an official seal or signature, the letterhead of a public agency, a statement that copyright is held by ... such an agency, or some similar indicia. In the usual case, the presence of such indicia is sufficient to qualify the item under Rule 902(5). However, whether a writing is an official publication is a preliminary fact for the court to determine under Rule 104(a). Thus, the court may consider evidence other than the item in question in making this determination.

Assuming the requirements of Rule 902(5) are met, the copy of the public record is self-authenticating. This does not mean, of course, that the item is

admissible since admissibility issues other than authenticity may still be raised under the Evidence Rules or the Constitution.

31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 7139 (2000)(emphasis added).

[¶ 11.] Applying those principles here, the manual offered by Machmuller is a multi-colored pamphlet obviously mass-produced and printed in multiple copies for distribution to driver's preparing to take the South Dakota driver's license examination. It contains an inscription on the back from the South Dakota Department of Commerce and Regulation—Division of Highway Safety and also gives the Pierre address for that government office. The inside front cover of the manual contains a copy of a letter from the current Governor on the Governor's official letterhead under the seal of the State of South Dakota. These official marks and attributions render it highly unlikely that the document was counterfeited and make it readily clear that "the genuineness of [the manual] is ... obvious on its face[.]" *See id.* Thus, the document was self-authenticating and the trial court abused its discretion to the extent it excluded the manual for lack of sufficient authentication.

[¶ 12.] It must be noted, as cautioned by *Wright & Gold, supra,* authentication does not automatically render a document admissible. To be admissible, a document must also be relevant. *See State v. Walton,* 1999 SD 80, ¶ 19, 600 N.W.2d 524, 529 (for evidence to be admissible it must be relevant). Here, the only relevance of the manual mentioned by Machmuller's counsel was that it would provide necessary data for his doctor's expert opinion. It follows that, if the doctor's opinion was not otherwise admissible, the manual had no further relevance in the case. This leads to Machmuller's second issue.

## ISSUE TWO

[¶ 13.] **Did the court abuse its discretion in failing to find Macmuller's doctor qualified as an expert witness?**

[¶ 14.] " '[T]he trial court has broad discretion in determining the qualifications of expert witnesses and in admitting expert testimony.' " *State v. Edelman,* 1999 SD 52, ¶ 38, 593 N.W.2d 419, 425 (quoting *State v. Dirk,* 364 N.W.2d 117, 120 (S.D.1985)). It's rulings in this regard are reviewed under the abuse of discretion standard. *See id.*

[¶ 15.] The magistrate court refused to find Machmuller's doctor was qualified as an expert because he had not spent enough time in his career studying the effects of alcohol on a person's blood alcohol level and because his testimony would be based almost exclusively on the South Dakota Driver's License Manual. Machmuller argues this ruling was an abuse of discretion. We agree.

[¶ 16.] "South Dakota has adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) for the admission of expert scientific testimony in a criminal trial." *Edelman,* 1999 SD 52 at ¶ 13, 593 N.W.2d at 422. Under this test, "the trial judge ... has the 'task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.' " *State v. Hofer,* 512 N.W.2d 482, 484 (S.D.1994)(quoting *Daubert,* 509 U.S. at 597, 113 S.Ct. at 2799, 125 L.Ed.2d at 485).

[¶ 17.] Here the State conceded important factors relevant to the reliability prong of the *Daubert* inquiry in a stipulation at trial. During the course of the *Daubert* hearing, the following exchange took place between the trial court, the prosecutor and defense counsel:

THE COURT: Now Mr. Chavis [the prosecutor], I don't think you would dispute the fact that chemistry and science is well established—and I'm trying to save us some time—they've well established certain average man theories regarding the consumption of alcohol. Would you stipulate to that and how it affects the blood alcohol?

MR. CHAVIS: If I didn't know the doctor I wouldn't, but since I know him, yes, I know the doctor, *I stipulate.*

THE COURT: Then the question is, during this brief hearing I'll take the foundational testimony to determine whether or not he's qualified to give that testimony unless you want to save us some time and stipulate to it.

MR. CHAVIS: I think, Judge, I don't know what he's going to testify to. If he's going to testify that a person with a certain body weight and a certain height and had so many drinks and so much time, absorb in, absorb out, process in, process out, you know, that's one thing. But if he's going to say, you know, based upon this little handy, dandy book put out by the state, you know, it looks to me like he's only had three drinks, he should be in good shape, I don't think we can allow that. I don't think the book can come in.

I'd kind of renew my objection and ask for a standing objection so we don't disrupt the jury.

THE COURT: You'll be granted that standing objection.

MR. CHAVIS: As to him testifying about a charge which doesn't exist.

THE COURT: That's understood.

\* \* \*

THE COURT: He's stipulated so far, if I understand it right, that the methodol-

ogies concerning the chemistry, the amount of alcohol and how that alcohol consumed affects blood alcohol levels, is a scientifically reliable theory. It's been published. It's even published in our book here. It's been published widely around the country and has been widely testified to by experts in the field. You agree to that?

MR. CHAVIS: I do. I assume, and we can ask him, and *I assume that Dr. Smith has had the education, experience and training to so testify.* (emphasis added).

[¶ 18.] Following this exchange, the court went on to take testimony from Machmuller's doctor concerning his education and background and his considerable training, experience and expertise in chemistry, pharmacology[3] and medicine. The doctor also testified that, over the years, he had been called upon by a number of major drug firms to sit on advisory boards and teach other physicians in the area of pharmacology. In addition, the doctor testified that he had been the chairman of a multi-organizational body advising on OSHA regulations for psychotropic drugs in nursing homes and that, more recently, he had been a member of a group dealing with pharmacologic issues in nursing homes for Medicare. The doctor further testified concerning his ability to calculate blood-alcohol levels based upon weight, alcohol consumed and extrapolation charts and indicated he could demonstrate his calculations to the jury and explain them.

[¶ 19.] Notwithstanding the above testimony and the stipulation by the state's attorney, the court found Machmuller's doctor was not qualified to testify as an expert in this case. This was error. Considering the State's stipulation to the doctor's qualifications and the doctor's own

---

**3.** "Pharmacology" is "1. The science of drugs, including their composition, uses, and effects. 2. The characteristics or properties of a drug, esp those that make it medically effective." The American Heritage College Dictionary 1024 (3d ed.1997).

testimony concerning his extensive medical and pharmacological background, we conclude that the court's determination was an abuse of discretion. Clearly, the stipulation and the doctor's testimony were more than adequate to establish his credentials as an expert and that his analysis would rest on a reliable foundation supported by scientifically valid principles. *Daubert* requires nothing more. *See Hofer, supra.*

[¶ 20.] Reversed and remanded.

[¶ 21.] AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 22.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 23.] I agree with the result on both issues but disagree with the majority opinion's treatment of issue 1 as dependent on issue 2. Both the manual and the expert should have been admitted in their own right.

[¶ 24.] The majority opinion recognizes that the manual was self-authenticating and admissible if proven relevant. That relevancy, however, is then linked to the treatment of issue 2 concerning the admissibility of Machmuller's expert: "It follows that, if the doctor's opinion was not otherwise admissible, the manual had no further relevance in the case." This statement is confusing and in error. What could be more relevant than the blood alcohol content of Machmuller? Even if the trier of fact chose to disregard Machmuller's account of the amount of alcohol consumed or his level of intoxication, Machmuller was clearly entitled to assert his defense.

[¶ 25.] Though the manual would not be decisive, it enabled the defendant to properly argue his version of the facts. The record demonstrates that the manual served a purpose beyond the expert testimony. Defense counsel first attempted to introduce the manual during cross-examination of the arresting officer, who was perhaps the most damaging witness against Machmuller. The trial court sustained the State's objection finding the manual was without authentication and not relevant. Admittedly, this reasoning was error. As the manual and the extrapolation of blood alcohol content were relevant at all times in determining whether the defendant was driving under the influence, it was admissible in its own right. The manual could then be properly used by the defense expert and in challenging the State's witness.

[¶ 26.] By attempting to limit the relevancy of this manual to the admissibility of the expert, the majority opinion is doing exactly what it faults the trial court for doing, requiring a foundation for this self-authenticating document. This reasoning defies logic and the law.